FILED

FEB 15 2023

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>SOON HEE KIM,<br><br>          Debtor. | BAP No. CC-22-1143-FLC<br><br>Bk. No. 6:18-bk-19112-SY |
| HEA SOOK KANG,<br>          Appellant,<br>v.<br>SOON HEE KIM,<br>          Appellee. | Adv. No. 6:19-ap-01019-SY<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Scott H. Yun, Bankruptcy Judge, Presiding

Before: FARIS, LAFFERTY, and CORBIT, Bankruptcy Judges.

## INTRODUCTION

Creditor Hea Sook Kang asserted that her claim against chapter 7[1]

debtor Soon Hee Kim was nondischargeable under § 523(a)(2)(A). At trial,

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

the bankruptcy court refused to let Ms. Kang introduce any exhibits because the court thought that she and her counsel had not filed the documents in compliance with the court's trial procedures. It considered the parties' conflicting testimony and ruled against Ms. Kang.

On appeal, Ms. Kang argues that the court's factual findings were not only wrong, but impermissibly infected with bias against her. Although the court's reaction to Ms. Kang's noncompliance was harsh, we see no reversible error. We AFFIRM.

## FACTS[2]

### A.    Prepetition events

In 2014, Ms. Kang engaged Ms. Kim to provide financial services related to Ms. Kang's business and to help her shield her assets from potential claims. Allegedly on Ms. Kim's advice, Ms. Kang sold her home and deposited the sale proceeds ($130,000) into a bank account held by a newly-formed company, IK & H, LLC.

The parties dispute who controlled IK & H, but both Ms. Kim and Ms. Kang had access to the bank account. Ms. Kim withdrew the money and deposited it into her own account, then loaned the money to a few unidentified clients with the aim of receiving a greater return on the "investment." She claimed that she acted with Ms. Kang's knowledge and

---

[2] We exercise our discretion to review the documents electronically filed on the bankruptcy court's docket, as appropriate. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

permission, but Ms. Kang maintained that she did not know of Ms. Kim's actions. Ms. Kim's clients failed to pay back the money, so she was unable to return Ms. Kang's funds.

Ms. Kang sued Ms. Kim in California state court for return of the $130,000 plus punitive damages. The parties entered into a memorandum of agreement to settle the case. The state court entered a stipulated judgment in Ms. Kang's favor in October 2017. The judgment states that it adjudicated the claims in a second amended complaint.

## B. Ms. Kim's bankruptcy case and the adversary proceeding

After Ms. Kim filed a chapter 7 petition, Ms. Kang filed an adversary complaint against her in January 2019. She asserted three causes of action: (1) Fraud and Deceit, (2) Fraudulent Concealment, and (3) Non-Dischargeability Pursuant to 11 U.S.C. § 523(a)(2)(A). The complaint referred to Ms. Kang's state court complaint against Ms. Kim and the allegation that Ms. Kim wrongfully took her money from the bank account. Although it referenced the memorandum of agreement and state court complaint and judgment and said that copies of those documents were attached as exhibits, none of those documents was in fact attached to the complaint.

As to the claim for Fraud and Deceit, Ms. Kang alleged that Ms. Kim, "through false pretense, false representation, concealment and/or actual fraud, acted to induce Plaintiff to enter into a contract for business consultation." She said that Ms. Kim "inten[ded] to steal Plaintiff's funds

3

by inducing Plaintiff into transferring funds into [IK & H's account]."

As to the claim for Fraudulent Concealment, Ms. Kang alleged that Ms. Kim "knowingly concealed facts from Plaintiff in order to induce Plaintiff into entering into the Agreement [for business consultation]." She said that Ms. Kim intentionally concealed her intent to not return Ms. Kang's funds.

Finally, as to the nondischargeability claim under § 523(a)(2)(A), Ms. Kang incorporated her prior allegations and stated that Ms. Kim undertook "a scheme to deprive Plaintiff of her money through false promises, fraudulent inducements, deception and actual fraud, which caused Plaintiff to enter into the agreement with Debtor."

Ms. Kim disputed that the state court judgment included a fraud claim and stated that the state court declined to award punitive damages because it determined that Ms. Kang could not prove fraud.

On May 20, 2021, over a year prior to trial, Ms. Kang filed two exhibit lists to which were attached (among other exhibits) the first amended complaint filed in state court and the state court judgment. Although the state court judgment recites that judgment was entered on the second amended complaint, Ms. Kang only offered a copy of the first amended complaint and never provided a copy of the second amended complaint.

Ms. Kim also filed an exhibit list and documents that included the memorandum of agreement for the state court settlement and IK & H's corporate documents.

4

The parties filed a joint pretrial stipulation that included a list of trial exhibits that the parties intended to use at trial. That list included the first amended complaint filed in state court, the memorandum of agreement that settled the state court case, and the state court's judgment. The bankruptcy court approved the joint pretrial stipulation on November 18, 2021.

## C.    Trial

It would be an understatement to say that the adversary proceeding dragged. Ms. Kang went through four attorneys. The court had to reschedule the trial once because Ms. Kim contracted COVID-19 the day before trial. The court was understandably unhappy when it learned that Ms. Kang could not have presented her case on that date even if Ms. Kim were healthy, because Ms. Kang was in Korea.

The case was set for trial on June 28, 2022, three-and-a-half years after the inception of the case. Only five days before the trial date, Ms. Kang retained her trial counsel (her fourth attorney in the case). Four days before trial, the parties presented a stipulation to continue the trial, but the court denied the continuance.

Neither Ms. Kang nor Ms. Kim had complied with the court's trial procedures requiring that they submit trial exhibit binders and trial briefs prior to trial. (Ms. Kang belatedly filed a trial brief on the day of trial.) Ms. Kang's counsel had binders of trial exhibits with him, but he appeared to agree with the court that Ms. Kang had not submitted any exhibits to the

court prior to trial. He argued, however, that the bankruptcy court should consider the state court judgment because it had issue preclusive effect. The court replied that it had never seen the state court judgment. Neither counsel reminded the court that both parties had filed all of their exhibits, including the judgment, about a year earlier, or that the court had approved their exhibit list. The bankruptcy court sustained Ms. Kim's objection to Ms. Kang's exhibits (and also excluded Ms. Kim's exhibits because she too had not complied with the court's procedures).

Ms. Kang testified that she did not give Ms. Kim permission to withdraw the $130,000 from IK & H's bank account. Under cross-examination, she seemed unable to identify any misrepresentation or wrongdoing by Ms. Kim. Ms. Kang's counsel tried to clarify her testimony on redirect, but the court sustained Ms. Kim's objections, stating that it had already heard her testimony.

Ms. Kim testified that Ms. Kang had given her permission to "invest" the account funds at a higher interest rate than the bank deposit yielded. She said that she did not make any misrepresentation and that she had always intended to return the money to Ms. Kang, but she could not do so because her other clients failed to repay the loans and had disappeared.

The bankruptcy court ruled from the bench. It emphasized that the adversary proceeding had dragged on for an exceptionally long time, largely due to Ms. Kang's behavior. It noted that Ms. Kang had changed her theory of the case multiple times. It stated that it was "shocked" to hear

6

Ms. Kang's counsel advocate for issue preclusion, because it had never seen the documents that would support such a position, including the state court complaint and stipulated judgment, and because she had not previously made that argument.

The court also faulted Ms. Kang for being unavailable on the original trial date (because she was in Korea) and criticized her for wasting the court's and opposing party's time.

The bankruptcy court spoke at length about Ms. Kang's failure to articulate a cogent theory of the case. It said that she was unable to identify any particular misrepresentation, so she necessarily could not establish the falsity of the representation, Ms. Kim's intent to deceive, or Ms. Kang's reliance. It concluded that Ms. Kang had not carried her burden at trial and entered judgment in Ms. Kim's favor.

Ms. Kang timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in entering judgment against Ms. Kang on her § 523(a)(2)(A) claim.

## STANDARDS OF REVIEW

In appeals from judgments under § 523(a), we review the bankruptcy court's factual findings under the clearly erroneous standard and its legal

conclusions de novo. *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 28 (9th Cir. BAP 2009), *aff'd*, 407 F. App'x 176 (9th Cir. 2010); *see also Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 706 (9th Cir. 2008) ("Whether a claim is nondischargeable presents mixed issues of law and fact and is also reviewed de novo."). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

Findings of fact are clearly erroneous only if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). We give particular deference to the bankruptcy court's credibility findings. *Id.* If two views of the evidence are possible, the court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985).

We review for an abuse of discretion the bankruptcy court's evidentiary rulings. *Int'l Ass'n of Firefighters, Local 1186 v. City of Vallejo (In re City of Vallejo)*, 408 B.R. 280, 292 (9th Cir. BAP 2009). "To reverse on the basis of an erroneous evidentiary ruling, we must conclude not only that the bankruptcy court abused its discretion, but also that the error was prejudicial." *Id.* (citation omitted).

When we review "the bankruptcy court's exclusion of evidence . . . under the court's inherent powers, the Local Rules of Court, and the Civil Rules[,] . . . [w]e first engage in de novo review of the legal issue of whether the bankruptcy court possessed the power to exclude Plaintiffs'

evidence. If the power existed, the bankruptcy court's exercise of that power will only be reversed for an abuse of discretion." *Kostecki v. Sutton (In re Sutton)*, BAP No. EC-14-1204-JuFD, 2015 WL 7776658, at *5 (9th Cir. BAP Dec. 3, 2015).

A bankruptcy court abuses its discretion if it applies an incorrect legal standard or misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support from evidence in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

We may affirm on any basis supported by the record. *Black v. Bonnie Springs Family Ltd. P'ship (In re Black)*, 487 B.R. 202, 211 (9th Cir. BAP 2013).

## DISCUSSION

### A. The bankruptcy court did not abuse its discretion when it excluded the trial exhibits.

Ms. Kang argues that the bankruptcy court should not have excluded evidence of the state court judgment. Although the court incorrectly stated that the evidence Ms. Kang sought to introduce was not in the record, it was correct that she failed to comply with the court's trial procedures (that allow for exclusion of evidence), the court did not abuse its discretion when it excluded the evidence as a sanction for that failure, and, in any event, even if the court's exclusion of that evidence was erroneous, the error was harmless. We perceive no reversible error.

We afford bankruptcy courts wide discretion in setting their trial

9

procedures. *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 864 (9th Cir. 2014) (stating that "a trial court's power to control the conduct of trial is broad" and holding that it was within the trial court's discretion not to consider evidence beyond what it stated it would allow); *In re Namvar*, No. CV 13-02664 GAF JCGX, 2014 WL 5810367, at *3-4 (C.D. Cal. Nov. 6, 2014) ("The proper conduct of pre-trial and trial procedures resides in the discretion of the trial court.").

But additional requirements come into play when the court imposes sanctions for noncompliance with its local rules:

> [T]he legislative grant of power is not a discretionless or roving commission for the district court to bludgeon violators of local or federal rules. . . . First, by the terms of the statute [28 U.S.C. § 2071], sanctions must be consistent with the Federal Rules and with other statutes. Second, the order must be necessary for the court to "carry out the conduct of its business." There must be a close connection between the sanctionable conduct and the need to preserve the integrity of the court docket or the sanctity of the federal rules. Third, the order must be consistent with "principles of right and justice." Finally, any sanction imposed must be proportionate to the offense and commensurate with principles of restraint and dignity inherent in judicial power.

*Zambrano v. City of Tustin*, 885 F.2d 1473, 1480 (9th Cir. 1989) (citations and footnote omitted); *see id.* at 1479 ("[W]hile we carefully scrutinize claims of judicial overreaching, we have held that Congress did authorize the federal courts to impose a 'relatively mild' form of sanctions as a means of

preserving authority and control over the district bar.").

The bankruptcy court did not expressly follow this analytical framework, and the members of this Panel might not have imposed the same sanction if we were the trial judge. But the record supports a conclusion that the court did not abuse its discretion in excluding the trial exhibits.

First, the sanction was consistent with Rule 9029(a), which permits the bankruptcy courts to "make and amend rules of practice and procedure . . . ." In turn, rule 1001-1(d) of the Local Bankruptcy Rules for the Central District of California ("LBR") allows the court to "make additional orders as it deems appropriate, in the interest of justice." Further, LBR 1001-1(f) provides that "[t]he failure of counsel or of a party to comply with these Local Bankruptcy Rules . . . or with any order of the court may be grounds for the imposition of sanctions pursuant to applicable law, including the Bankruptcy Code . . . and the inherent powers of the court."[3]

Pursuant to this authority in the local rules, Judge Yun devised his trial procedures and posted them on the court's publicly accessible website. Among other things, they provide that the plaintiff must: (1) file and submit to opposing counsel all exhibits for the plaintiff's case in chief twenty-eight days before trial; (2) deliver a copy of the exhibits to chambers

---

[3] We also note that the sanction of excluding trial exhibits is similar to the exclusion of evidence when a party does not comply with a court's pretrial orders. *See* Civil Rule 16(f); Civil Rule 37(b)(2)(A)(ii).

on the same date; and (3) provide a copy of all exhibits to the courtroom deputy seven days before trial.

Judge's Yun's trial procedures caution that "[f]ailure to comply with these procedures may result in the imposition of sanctions including, but not limited to, . . . the exclusion of evidence (e.g., witnesses who were not timely identified or exhibits that were not timely submitted)."

It is undisputed that Ms. Kang did not comply with the bankruptcy court's trial procedures. She filed her exhibits, and probably submitted them to opposing counsel, about a year before trial, long before the twenty-eight days required by the court's trial procedures. But she did not deliver to chambers a copy of the exhibits that conformed to Judge Yun's requirements twenty-eight days prior to trial, nor did she submit a set of exhibits to the courtroom deputy seven days prior to trial. The bankruptcy court's written procedures make clear that failure to comply may result in "the exclusion of evidence," such as in instances where "exhibits . . . were not timely submitted." Thus, the sanction was consistent with the local rules and bankruptcy rules and statutes.

Second, the bankruptcy court's trial procedures were intended to facilitate the orderly conduct of trials. All of the judges on this Panel are also trial judges who have seen trials go off the rails when counsel fails to submit exhibits properly and timely. The bankruptcy court's procedures are reasonably calculated to reduce the risk of such mishaps.

Third, the court's decision to exclude the exhibits comported with

12

principles of "right and justice" because they were meant to uphold the integrity of the court's trial procedures and protect both parties' right to a fair trial.

Finally, we must consider whether the exclusion of the trial exhibits was proportionate to the offense and demonstrated the court's restraint and dignity. The court did not issue a terminating sanction: it did not dismiss Ms. Kang's case outright, and it allowed her to present oral testimony. Rather, it only precluded Ms. Kang from introducing the trial exhibits that she failed to provide to the court in a timely manner.[4] Moreover, the only exhibits about which Ms. Kang complains on appeal were the state court documents which she argued had issue preclusive effect. The court's decision did not prevent her from proving her case at trial; it only prevented her from avoiding a presentation of her case on the merits.[5]

---

[4] This case is not like *Sutton*, where the plaintiffs in an adversary proceeding under § 523(a)(2)(A) failed to timely file their trial declarations, and the bankruptcy court struck the declarations and refused to accept the witnesses' oral testimony. That was effectively a case-terminating sanction because it left the plaintiffs unable to prove their case. We held that such a sanction was an abuse of discretion because the court did not make a finding of bad faith and did not "consider[] a more moderate penalty before imposing what was essentially a case-terminating sanction." 2015 WL 7776658 at *8. In this case, the exclusion of the exhibits affected only one theory of Ms. Kang's case and did not prevent her from proving her case on other evidence.

[5] The bankruptcy court also refused to consider Ms. Kang's trial brief because she did not file it until the day of trial, rather than seven days before trial as the court's trial procedures require. The requirement is reasonable; Ms. Kang cannot deny her noncompliance; and the court allowed her counsel to make all of his arguments orally.

13

The bankruptcy court's sanction gives us some concern, however, because the exhibits were in the record and available to the court: Ms. Kang had filed the challenged exhibits over a year prior to trial. This does not change our conclusion, however, because the bankruptcy court had no duty to independently scour the docket for exhibits when counsel failed to provide them in compliance with the court's trial procedures. *See generally Solaia Tech. LLC v. ArvinMeritor, Inc.*, 361 F. Supp. 2d 797, 808 n.12 (N.D. Ill. 2005) ("Precedent repeatedly teaches that the Court has no duty to scour the record searching for arguments or facts on behalf of a party."); *cf. Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (in the context of summary judgment, reaffirming that "requiring the district court to search the entire record, even though the adverse party's response does not set out the specific facts or disclose where in the record the evidence for them can be found, is unfair" to the court, the opposing party, and litigants in other matters). Further, neither Ms. Kang nor Ms. Kim can complain because their attorneys did not remind the court that the exhibits were in the file.

Moreover, even if exclusion of the exhibits were error, such error was harmless. The only exhibits about which Ms. Kang complains on appeal are the state court documents, and she offered those documents only to support the theory that issue preclusion spared her from the need to

---

This was not an abuse of discretion.

litigate her case.[6] But she offered into evidence only the judgment (which adjudicated the claims in a second amended complaint) and the first amended complaint in the state court action. Without the complaint on which the judgment was based, the bankruptcy court could not have decided exactly what issues were adjudicated and whether that adjudication could and should be given preclusive effect. *See Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995) ("[A] party must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action. Any reasonable doubt as to what was decided by a prior judgment should be resolved against allowing the collateral estoppel effect."), *aff'd*, 100 F.3d 110 (9th Cir. 1996).

Finally, even if the elements of issue preclusion were met, the bankruptcy court ultimately had no obligation to afford the state court judgment issue preclusive effect. *See Lopez v. Emergency Restoration Serv., Inc. (In re Lopez)*, 367 B.R. 99, 108 (9th Cir. BAP 2007) ("In California, issue preclusion is not applied automatically or rigidly, and courts are permitted to decline to give issue preclusive effect to prior judgments in deference of

---

[6] At oral argument before the Panel, Ms. Kang's counsel offered another ground for the admission of the memorandum of agreement: he contended that it included an admission of fraud by Ms. Kim. He did not make that argument in the bankruptcy court. Instead, as soon as the bankruptcy court questioned the timeliness of the exhibits, Ms. Kang's counsel immediately conceded that the documents were not in evidence and were not properly before the court due to counsel's failure to comply with the local rules. Accordingly, Ms. Kang is not entitled to argue this ground for admissibility for the first time on appeal.

countervailing considerations of fairness."). Ms. Kang cannot establish that the exclusion of the exhibits changed the outcome.

**B.    The bankruptcy court did not err in holding that Ms. Kang failed to establish that the debt was nondischargeable.**

Section 523(a)(2) precludes dischargeability of a debt resulting from "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" The Ninth Circuit has identified the five elements of a § 523(a)(2)(A) claim:

> (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of [the debtor's] statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

*Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000); *see In re Weinberg*, 410 B.R. at 35.

Whether the debtor made a false statement and whether the debtor intended to deceive are factual questions. *Candland v. Ins. Co. of N. Am. (In re Candland)*, 90 F.3d 1466, 1469 (9th Cir. 1996), *as amended* (Oct. 2, 1996).

The creditor bears the burden of proving § 523(a)(2)(A)'s applicability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010).

**1.    Ms. Kang failed to carry her burden of proof.**

The bankruptcy court properly articulated both the legal standard

16

and evidentiary standard for a nondischargeability claim under § 523(a)(2)(A). It then concluded that Ms. Kang failed to carry her burden of establishing each element of § 523(a)(2)(A) by a preponderance of the evidence. We discern no error.

The bankruptcy court found that Ms. Kang failed to establish misrepresentation, fraudulent omission, or deceptive conduct by Ms. Kim. The court noted that Ms. Kang repeatedly changed her position as to what the alleged misrepresentation was. At trial, Ms. Kang appeared unable to articulate the alleged false or fraudulent statement. When asked under cross-examination to identify the misrepresentation at issue, she evaded the question then twice stated, "I don't know." Although she later said that her complaint was based on Ms. Kang's failure to return the money in the account, the bankruptcy court correctly pointed out that the failure to pay money on demand, in and of itself, does not necessarily constitute misrepresentation or fraud. In other words, the bankruptcy court correctly found that Ms. Kang did not prove any misrepresentation, fraudulent omission, or deceptive conduct under § 523(a)(2)(A).

Ms. Kang argues on appeal that the bankruptcy court misstated the evidence, ignored her testimony, and offered unsupported reasons for its decision. But Ms. Kim testified that Ms. Kang directed her to seek more interest on the funds and that she had intended to return Ms. Kang's money. The court evidently believed Ms. Kim's testimony and disbelieved Ms. Kang. (The court did not make any explicit credibility determinations,

17

but it was not required to do so.) Thus, under any of Ms. Kang's proffered theories of the case, she failed to carry her burden of proof.

Similarly, because Ms. Kang failed to establish any misrepresentation or fraud, she also did not establish Ms. Kim's knowledge of the alleged falsity, Ms. Kim's intent to deceive her, and Ms. Kang's reliance on a misrepresentation. The bankruptcy court did not err in ruling that Ms. Kang did not establish the elements of § 523(a)(2)(A) by a preponderance of the evidence.

### 2.    Ms. Kang failed to plead or establish liability under § 523(a)(4).

For the first time, Ms. Kang argues in her opening brief that she was entitled to judgment under § 523(a)(4) for embezzlement. We will not consider this new argument in the first instance on appeal. *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009). Ms. Kang's adversary complaint and the parties' joint pretrial statement never mentioned § 523(a)(4). The only nondischargeability claim in the complaint was § 523(a)(2)(A), and the joint pretrial statement did not reference any aspect of § 523(a)(4). Furthermore, Ms. Kang never raised § 523(a)(4) at trial, instead focusing exclusively on § 523(a)(2)(A). This issue was never raised or argued before the bankruptcy court.[7]

---

[7] Even if Ms. Kang had properly raised a § 523(a)(4) claim "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[,]" we would remain unpersuaded. As stated above, the bankruptcy court did not clearly err when it found that Ms. Kang did not establish any wrongful or fraudulent act, much less a

## C. The bankruptcy court did not exhibit inappropriate bias against Ms. Kang and did not deny her due process.

Ms. Kang alleges repeatedly that the bankruptcy court was biased against her. She contends that the court deprived her of a fair trial by denying her due process. We reject both arguments.

The Ninth Circuit has instructed:

> A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. . . . [T]he test requires only a showing of an undue risk of bias, based on the psychological temptations affecting an average judge.

*Echavarria v. Filson*, 896 F.3d 1118, 1128-29 (9th Cir. 2018) (cleaned up).

Even if a judge develops a predisposition about a case, one must examine its source. The U.S. Supreme Court has counseled that

> opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or

---

wrongful or fraudulent intent. This finding, which Ms. Kim's testimony supports, negates an embezzlement claim under § 523(a)(4). *See Transamerica Com. Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir. 1991) ("Embezzlement, thus, requires three elements: '(1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use other than which [it] was entrusted; and (3) circumstances indicating fraud.'" (citations omitted)).

partiality challenge.

*Liteky v. United States*, 510 U.S. 540, 555 (1994). Thus, a judge's anger or annoyance based on a party's or attorney's substandard litigation conduct generally does not amount to impermissible bias.

The bankruptcy judge expressed great displeasure with the behavior of Ms. Kang and her various counsel. This was understandable: Ms. Kang's complaint was ineptly drawn and failed to include the exhibits it referenced; she went through four attorneys; she allowed a fairly straightforward case to linger on the court's docket for over three years; she was not even in the country on the initial trial date; and her trial testimony did not support the theory of her case. The way in which he expressed his displeasure was unusually strong but not so extreme as to show "deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*.

The bankruptcy court did not deny Ms. Kang's right to due process. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (cleaned up). The record shows that the bankruptcy court allowed Ms. Kang to present her case on the scheduled trial date – albeit without the use of trial exhibits that she failed to present timely – and the court considered the evidence. The bankruptcy court found her case lacking but did not deny due process.

## CONCLUSION

The bankruptcy court did not err in entering judgment against Ms. Kang on her adversary complaint. We AFFIRM.